United States District Court
Southern District of Texas
**ENTERED**
May 19, 2020
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| LAURA DENISE WASHINGTON, Appellee, vs. DITECH FINANCIAL LLC, *f/k/a Green Tree Servicing LLC*, Appellant. | § § § § § § § § § § § § § | CIVIL ACTION NO. 4:15-cv-02604  JUDGE CHARLES ESKRIDGE |

**MEMORANDUM AND OPINION
AFFIRMING ORDER OF BANKRUPTCY COURT**

Appellant Ditech Financial LLC, formerly known as Green Tree Servicing LLC, appeals an order of the bankruptcy court in the Southern District of Texas. This order sustained Appellee Laura Washington's objection to Green Tree's proof of claim regarding her mortgage.

The order is affirmed.

   1. Background

This dispute boils down to whether Washington was required to continue paying Private Mortgage Insurance (PMI) premiums after her home loan was modified. The Court recites the facts based on documentary evidence in the record, as supplemented by the testimony of Washington given at a hearing before the bankruptcy court.

Washington obtained a $125,000 loan in June 2007 that she used to purchase a home in Fresno, Texas. The loan was evidenced by a promissory note and secured by a deed of trust. Dkt 3-8 at 16–18 (promissory note), id at 20–35 (deed of trust). Washington was required to pay PMI of $267.71 per month

because she financed the entire sales price of the home. Dkt 3-8 at 60, line 1002 (June 2007 HUD-1 settlement statement); id at 68–69 (Fannie Mae Underwriting Findings reflecting PMI). Washington signed a Private Mortgage Insurance Disclosure that provided for payment of PMI as part of the loan. Id at 75–76.

Washington testified that she became ill and unable to work in 2010, which qualified her for a Home Affordable Modification Agreement (HAMP Modification). Dkt 3-13 at 21. She further testified that she was put on a modification trial period, during which she made several payments that did not include PMI and were accepted by then-lender Litton Loan Servicing. Id at 21, 24. The length of the trial period is unclear. Washington signed the HAMP Modification on September 22, 2010. Dkt 3-8 at 46. The HAMP Modification states that the new interest rate would begin to accrue on the new principal balance as of October 1, 2010 and that the first new monthly payment would be due on November 1, 2010. Id at 42.

Washington offered into evidence two statements from Litton Loan Servicing that did not include PMI. One was titled "Annual Escrow Account Disclosure Statement" and dated June 23, 2010. Dkt 3-9 at 57. The other was a "Monthly Statement" dated December 20, 2010. Id at 58. Green Tree objected to these on hearsay grounds. Dkt 3-13 at 14. The bankruptcy court excluded the latter from evidence but admitted the former as a recorded recollection under FRE 803(5). Id at 28, 30.

The note was transferred to Green Tree about six months after the HAMP Modification went into effect. Id at 11. The exact date of transfer is unclear. Green Tree then began issuing statements that included PMI. Ibid; see also Dkt 3-8 at 75–76 (March 10, 2015 Green Tree Escrow Account Disclosure Statement).

Washington could not afford her monthly payments with the added cost. She initiated her bankruptcy proceedings in December 2014. Green Tree filed its proof of claim in April 2015 for $150,106.00, with $39,334.86 in arrears and an ongoing monthly payment of $1,778.02. Dkt 3-12.

Washington filed an objection to Green Tree's proof of claim. Dkt 3-5. The bankruptcy court held an evidentiary hearing

on this objection in August 2015. See Dkt 3-13. Washington argued that the HAMP Modification modified the PMI requirement. She testified she had been employed for over a decade with title companies doing closings on mortgage loans. Id at 18–19. She had state certification as a signing agent to do so, as well as familiarity with mortgage loan documents. Id at 19. She testified it was her understanding at the time that the HAMP Modification wholly eliminated PMI. Id at 33.

The bankruptcy court ultimately disallowed Green Tree's proof of claim to the extent it included past and future PMI. Dkt 2-20; see also Dkt 3-13 at 60–61. It determined that the HAMP Modification excluded PMI, that it was Washington's understanding that PMI had been removed, and that her lender at the time accepted the payments without PMI included in them. Dkt 3-13 at 58.

Green Tree timely appealed this order. Dkt 1. This appeal was eventually reassigned to this Court in October 2019. Dkt 14.

### 2.  Legal standard

Federal district courts have jurisdiction to hear appeals from final judgments or orders of the bankruptcy courts. 28 USC § 158(a)(1). Because the district court functions as an appellate court, it applies the same standard of review that federal appellate courts use when reviewing district court decisions and may affirm, modify, reverse, or remand with instructions for further proceedings. See *Webb v Reserve Live Insurance Co*, 954 F2d 1102, 1103–04 (5th Cir 1992).

A district court reviews a bankruptcy court's findings of fact for clear error and its conclusions of law and mixed questions of fact and law *de novo*. *In re Seven Seas Petroleum Inc*, 522 F3d 575, 583 (5th Cir 2008); see also Fed R Bankr P 8013. Matters within a bankruptcy court's discretion are reviewed only for abuse of discretion. *In re Gandy*, 299 F3d 489, 494 (5th Cir 2002); *In re Waco Town Square Partners, LP*, 536 BR 756, 760 (SD Tex 2015). A bankruptcy court abuses its discretion when it applies an improper legal standard or bases its decision on clearly erroneous findings of fact. *In re Crager*, 691 F3d 671, 675 (5th Cir 2012).

The standard of review is of particular importance in this case. Both parties advert to it, but neither actually applies it. For

its part, Green Tree largely complains about many of the bankruptcy court's determinations that required exercise of discretion or fact-finding. "In such cases it is inappropriate and unwise for an appellate court to step in." *In re SBMC Healthcare LLC*, 547 BR 661, 683 (SD Tex 2016).

### 3. Analysis

Green Tree asserts two main errors by the bankruptcy court when sustaining Washington's objection to the subject proof of claim. The first is that the bankruptcy court should not have admitted the Litton Loan Servicing escrow statement. The other is that it incorrectly found the HAMP modification to eliminate Washington's obligation to pay PMI.

#### a. Admission of the escrow statement

The bankruptcy court admitted the Litton Loan Servicing annual escrow account disclosure statement from June 23, 2010 as a recorded recollection under Federal Rule of Evidence 803(5). Dkt 3-9 at 57. The exhibit was offered by Washington and received in evidence over Green Tree's objection. Dkt 3-13 at 28. The statement indicates anticipated collection of principal and interest amounts. As to escrow balances, the only items listed for payment are county taxes, water district taxes, and hazard insurance. PMI is nowhere listed on the document.

Green Tree argues admission was error. A trial court's decision to admit or exclude evidence is reviewed only for abuse of discretion. *Matter of Corland Corp*, 967 F2d 1069, 1074 (5th Cir 1992). This standard affords great latitude in the conduct of a bench trial. Ibid (citation omitted).

Rule 803(5) provides that a court may admit evidence as a recorded recollection when that record "is on a matter the witness once knew about but now cannot recall well enough to testify fully and accurately; was made or adopted by the witness when the matter was fresh in the witness's memory; and accurately reflects the witness's knowledge." The plain language of the rule establishes that the record need not have been personally prepared by the witness. But in such circumstances, the witness must testify that he or she "examined it and found it to be accurate." *O'Malley v US Fidelity & Guardian Co*, 776 F2d

494, 500 (5th Cir 1985); see also 2 *McCormick On Evidence* § 279 (8th ed 2020).

Upon objection to the escrow statement at hearing, Washington's counsel argued that she was using the information to "back up her personal knowledge." Dkt 3-13 at 27. On questioning by the bankruptcy court, Washington testified that the statement was consistent with her understanding of "the deal" she made in the HAMP Modification. Ibid. She also testified that she was "adopting the numbers in this document" as accurate. Ibid. And she testified that she provided the statement to Green Tree once it acquired her loan when the dispute arose as to whether PMI was included in the HAMP Modification. Ibid. The bankruptcy court then admitted the exhibit. Id at 28.

Washington did not prepare the statement. But she examined it and testified to its accuracy, thus adopting it. The information within the document was therefore admissible. But a further question concerns the form in which the bankruptcy court should have admitted this evidence.

Rule 803(5) states, "If admitted, the record may be read into evidence but may be received as an exhibit only if offered by an adverse party." This limitation in Rule 803(5) as to reading information into evidence as opposed to receiving the document itself as an exhibit is important when the action proceeds before a jury. As the Fifth Circuit noted in *United States v Judon*, "The drafters precluded the receipt of recorded recollection as an exhibit of the proponent of the memorandum in order to prevent the trier of fact from being overly impressed by the writing." 567 F2d 1289, 1294 (5th Cir 1978); see also 2 *McCormick On Evidence* § 279 (8th ed 2020): "Should the writing be admitted into evidence and be allowed to be taken to the jury room? Federal Rule 803(5) resolves the issue by resort to the ancient practice of reading the writing into evidence but not admitting it as an exhibit unless offered by the adverse party."

The bankruptcy court received the exhibit into evidence even though it was offered by Washington, not an adverse party. This did not strictly conform to the dictates of Rule 803(5). But the Federal Rules of Evidence are equally clear that "[a] party may

5

claim error in a ruling to admit or exclude evidence only if the error affects a substantial right of the party . . . ." FRE 103(a); see also FRCP 61 (harmless error rule); Fed R Bankr P 9005 (applying FRCP 61). The burden of proving that any error was prejudicial is on the party asserting it as such. *Williams v Manitowoc Cranes LLC*, 898 F3d 607, 615 (5th Cir 2018), citing *Ball v LeBlanc*, 792 F3d 584, 591 (5th Cir 2015).

Nothing suggests that the bankruptcy court compromised substantial rights of Green Tree by admitting the June 2010 escrow statement. Green Tree's main contention on this point is only that the escrow statement was "impermissibly used by the bankruptcy court to make or bolster its conclusions." Dkt 10 at 19. But whether the bankruptcy court received the actual statement as an exhibit or only admitted its information, the information itself was properly before the court for consideration. Indeed, Washington testified to her own recollection that escrow statements after the modification and prior to the transfer did not include PMI. Dkt 3-13 at 28. Green Tree neither objected to this testimony during the hearing nor contests it on appeal. And the bankruptcy court at length found that Washington was a credible and honest witness and debtor; that her experience with title companies closing loan mortgages gave her knowledge and understanding of the process; and, quite simply, that "her character is unassailable." Id at 59.

At a minimum, the bankruptcy court did not abuse its discretion in admitting the information within the escrow statement into evidence. To the extent any technical error exists as to admission of the exhibit itself, such error did not affect substantial rights. Reversal is not warranted where any error was harmless. *Williams*, 898 F3d at 615.

### b. Modification of the obligation to pay PMI

Green Tree argues that the bankruptcy court erred in finding that the HAMP modification eliminated Washington's obligation to pay PMI. It also asserts that the bankruptcy court incorrectly applied the burden of proof with respect to its proof of claim.

### i. The HAMP Modification

Washington stipulates that she was required to make PMI payments under the original loan documents. Dkt 3-13 at 10.

That is not at issue. The question is whether this obligation was modified. Green Tree asserts that Washington failed to prove a contractual modification of the PMI requirement.

Parties may of course modify their contracts under Texas law. *Hathaway v General Mills Inc*, 711 SW2d 227, 228 (Tex 1986). Such modification must satisfy the same elements familiar to all contracts—a meeting of the minds supported by consideration. Ibid. Proper construction of a contract is a question of law reviewed *de novo* by this Court. *Kona Technology Corp v Southern Pacific Transportation Co*, 225 F3d 595, 604 (5th Cir 2000) (citation omitted). Whether parties modified their contract depends on intent and is a question of fact. *Hathaway*, 711 SW2d at 228–29.

The burden of proving modification to a contract rests on the party asserting the modification. Id at 229. This remains true in the bankruptcy context, where the ultimate burden of proof lies with the party who would bear the burden if the dispute arose outside of those proceedings. *Raleigh v Illinois Department of Revenue,* 530 US 15, 17 (2000). Green Tree's proof of claim rises or falls depending upon whether there was a modification to remove PMI from Washington's loan. The burden of proving the modification as a factual matter thus rested on Washington.

*As to the bankruptcy court's construction of the contract.* The HAMP Modification stated it would "amend and supplement (1) the Mortgage on the Property, and (2) the Note secured by the Mortgage" (together the Loan Documents). Dkt 3-8 at 41.

Washington primarily relied on Section 3(c) of the HAMP Modification, which in a table set out the "payment schedule for the modified Loan." Id at 42. These terms, says this section, "shall supersede any provisions to the contrary in the Loan Documents." Listed there are a monthly principal and interest payment of $726.60 and an estimated monthly escrow payment of $456.25. The bankruptcy court ultimately found it "undisputed" that the escrow amount included only hazard insurance and taxes. Dkt 3-13 at 54. And indeed, Green Tree didn't attempt to argue the math otherwise, which in any event simply couldn't support a finding of PMI as included within the monthly escrow payment amount.

Green Tree instead primarily relied on Section 4(d) of the HAMP Modification. The bankruptcy court considered this section but ultimately found it lacking. Ibid. It states that Washington must continue to pay "mortgage insurance premiums, if any, or any sums payable to Lender in lieu of the payment of mortgage insurance premiums in accordance with the Loan Documents." Dkt 3-8 at 43. But use of *if any* makes this only a conditional statement. It doesn't support contention of a flat mandate that the HAMP Modification required Washington to continue to pay PMI. Indeed, this subsection also states that Washington "shall pay Lender the Funds for Escrow Items *unless Lender waives [her] obligation* to pay Lender Funds for any or all Escrow Items at any time." Ibid (emphasis added). This actually cuts against Green Tree's position because "Escrow Items" is defined within the same subsection to include PMI to the extent it is required. Ibid. And so if PMI were an expressly mandated item, it would have been included in the calculation of the estimated monthly escrow payment amount in Section 3(c). But as just noted, the math simply doesn't support that reading.

The Court finds no legal error as to the bankruptcy court's construction of the contract as it pertains to Sections 3(c) and 4(d). And the Court finds no clear error as to its related factual conclusions in this regard.

Green Tree also points to the PMI Disclosure that Washington originally signed in June 2007. Dkt 3-8 at 75–76. Green Tree asserts that this disclosure outlines the only parameters by which PMI could be canceled and that Washington did not meet any of the requirements for termination. Dkt 10 at 15–16. The bankruptcy court rejected this argument as ignoring the "reality" of the subsequent HAMP Modification. Dkt 3-13 at 58. Requirements for cancellation are only with respect to "Borrower Cancellation of PMI." Dkt 3-8 at 75. But as the bankruptcy court noted, the PMI Disclosure expressly allows for loan modification, stating, "If you and lender (or note holder) agree to a modification of the terms or conditions of your mortgage loan, then the cancellation date, termination date, or final termination will be recalculated to reflect the modified terms and conditions agreed upon." Id at 76; Dkt 3-13 at 53–54. This

raises—but doesn't resolve—the factual question whether Washington and her original lender agreed to a modification with her lender. As noted below, the bankruptcy court resolved that question against Green Tree based on the evidence presented. The Court finds no clear error, and its construction of the contract in this regard was correct.

Green Tree also relies on Chapter C65 of the HAMP Regulations. That regulation provides, "Servicers must service all Mortgages, including any Mortgage to be modified in accordance with the terms of the Program, so as to preserve and not to impair existing mortgage insurance coverage." Green Tree relies on this to argue, "As a matter of construction, PMI remains a requirement under a HAMP modification." Dkt 10 at 17–18. Its underlying, more sweeping contention is that PMI is never affected by HAMP modifications.

Green Tree did not present this argument to the bankruptcy court. There is colloquy with the bankruptcy court regarding the "Fannie Mae guidelines" generally—but only as to the court's question whether Fannie Mae would have recourse against Green Tree as to PMI premiums. Dkt 3-13 at 38–39. As to that point, counsel stated, "I honestly don't know how that would work with Fannie Mae." Chapter C65 itself is nowhere referenced, and more pertinently, Green Tree nowhere argued any regulation to constrain construction of the HAMP Modification.

A district court reviewing a bankruptcy appeal cannot consider issues that were not initially presented to the bankruptcy court. See *Barron v Countryman,* 432 F3d 590, 594 n 2 (5th Cir 2005). The argument is waived. But in any event, the regulation appears to impose an obligation by the government only upon Litton Loan Servicing as the servicer of the loan—not upon Washington as the borrower. Whether or not the former was required to abide by this regulation doesn't resolve the question whether it in fact acted contrary to the regulation when agreeing with the latter to a modification eliminating PMI.

*As to the bankruptcy court's factual determinations.* The bankruptcy court ultimately determined that Washington put forward sufficient evidence to prove modification. It relied on the following evidence offered by Washington in doing so:

9

- o The calculation of the payments in the HAMP Modification excluded PMI;
- o Washington's understanding that PMI had been removed;
- o Acceptance by her lender, Litton Loan Servicing, of payments without PMI after modification.

Dkt 3-13 at 58.

These are all factual determinations reviewed for clear error. *In re Seven Seas Petroleum Inc*, 522 F3d at 583. Evidence in the record supports each. The Court finds no clear error.

### ii. Burden of proof

Green Tree also makes a slightly different argument in this regard. It asserts that the bankruptcy court "erroneously placed the burden of proof" on it with respect to modification. Dkt 10 at 13. Proper allocation of the burden of proof is reviewed *de novo*, and determinations whether the parties met their burden of proof is reviewed under the clearly erroneous standard. *Broussard v State Farm Fire & Casualty Co*, 523 F3d 618, 625 (5th Cir 2008).

Allowance of claims is itself governed by 11 USC § 502. It provides that a proof of claim filed under § 501 is deemed allowed unless a party-in-interest objects. Id § 502(a). Once an objection is made, the court must determine the amount of the claim as of the petition date and "shall allow such claim in such amount" unless the claim falls under one of the nine listed statutory grounds for disallowance. Id § 502(b). Although not specifically referenced at the hearing, at issue was § 502(b)(1), under which a claim must be disallowed if it "is unenforceable against the debtor and property of the debtor, under any agreement or applicable law." Green Tree's argument would seemingly have it bear no burden of proof in this regard. Dkt 10 at 14–15.

The Fifth Circuit holds to the contrary that sections 501 and 502 of the Bankruptcy Code create a burden-shifting regime. Together with Bankruptcy Rule 3001, these provide that "a party correctly filing a proof of claim is deemed to have established a prima facie case against the debtor's assets." *In re Fidelity Holding Co Ltd,* 837 F2d 696, 698 (5th Cir 1988). The claimant will prevail unless a party who objects to the proof of claim produces

10

evidence to rebut the claim. Ibid. Upon production of this rebuttal evidence, the burden shifts to the claimant to prove its claim by a preponderance of the evidence. Ibid; see also *In re DePugh*, 409 BR 125, 135 (Bankr SD Tex 2009).

The bankruptcy court properly recognized all this, stating, "The proof of claim filed by Green Tree Servicing enjoys the presumption of validity until the debtor comes forward with some evidence to take away that prima facie validity." Dkt 3-13 at 58. It then determined that Washington came forward with sufficient rebuttal evidence to shift the burden back to Green Tree. In doing so, the bankruptcy court referred to evidence offered by Washington as described above, finding that PMI was not included based on the calculation of escrow payments listed in the HAMP Modification, on Washington's understanding that PMI had been removed, and on the fact that her then-lender Litton Loan Servicing accepted her loan payments without PMI. Ibid.

Once it determined that Washington produced sufficient rebuttal evidence, the bankruptcy court shifted the burden to Green Tree "to come forward with evidence in support of its claim." Ibid. This was proper. See *In re DePugh*, 409 BR at 135. And it then ultimately concluded that Green Tree failed to meet its required burden, noting that Green Tree could offer no "testimonial or documentary support for why the lender did what it did." Dkt 3-13 at 59. Indeed, the bankruptcy court found that Green Tree picked up all of the other adjustments in the HAMP Modification on a go-forward basis. Id at 58.

The bankruptcy court observed that "there are certainly gaps in the documentation, but I'm required to make a determination based upon the record that I am presented with." Ibid. It therefore relied on Washington's testimony, finding her to be credible. Id at 59. A reviewing court must give due regard to the opportunity of the bankruptcy court to judge the credibility of witnesses. *In re Dennis*, 330 F3d 696, 701 (5th Cir 2003).

Neither conclusion by the bankruptcy court—first, that Washington met her burden to rebut the *prima facie* validity of Green Tree's claim; second, that Green Tree failed to produce sufficient rebuttal evidence—was clearly erroneous. *Broussard*,

11

523 F3d at 625. Green Tree's assertion of error regarding the burden of proof is denied.

4. Conclusion

The order of the bankruptcy court is AFFIRMED.

SO ORDERED.

Signed on May 19, 2020, at Houston, Texas.

Hon. Charles Eskridge
United States District Judge